# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JANICK WEBB,

    Plaintiff,

v.                                                          Civ. No. 16-777 WJ/GBW

NANCY A. BERRYHILL, Acting
Commissioner of the Social
Security Administration,

    Defendant.

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's objections (*doc. 30*) to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (*doc. 29*), recommending that the Court deny Plaintiff's Motion to Remand to Agency (*doc. 15*). Being fully advised, the Court will OVERRULE the objections, ADOPT the PFRD, and DENY Plaintiff's Motion.

### I. BACKGROUND

Plaintiff applied for Social Security Disability Insurance benefits ("SSDI") on August 3, 2012, alleging a disability onset date of March 29, 2012. Administrative Record ("AR") at 192-94. Plaintiff alleged that he had a disability resulting from a ruptured back disc, a bulging neck disc, and depression. AR at 209. The claim was

initially denied on November 16, 2012, and upon reconsideration on April 18, 2013.  AR at 90-102, 104-18.  An Administrative Law Judge (ALJ) held a hearing on August 21, 2014.  AR at 43-88.

On October 8, 2014, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled.  AR at 14-34.  Plaintiff appealed the denial of his application to the Appeals Council, which declined review on May 2, 2016, making the ALJ's decision the final decision of the Commissioner.  AR at 1-3.  Plaintiff sought judicial review of the Commissioner's decision by filing a Complaint in this Court on July 5, 2016.  *Doc. 1*.  Plaintiff filed his Motion to Remand the agency decision on January 19, 2017, and briefing was completed on the Motion to Remand on April 19, 2017.  *Docs. 15, 20, 21*.

On October 3, 2017, Magistrate Judge Gregory B. Wormuth issued his Proposed Findings and Recommended Disposition recommending that the Court deny Plaintiff's Motion to Remand.  *Doc. 29*.  The Magistrate Judge recommended affirming the Commissioner's decision to deny Plaintiff's application for benefits because the ALJ (1) properly supported his decision to assign little weight to the opinion of Plaintiff's treating physician Dr. Paul Puziss, (2) properly incorporated the opinion of the SSA's consultative psychological examiner Dr. Edwin Homes into Plaintiff's RFC, and (3) comported with proper legal standards in determining Plaintiff's sitting/standing and reaching limitations.  *See id.* at 7-21.

Plaintiff filed objections to the PFRD on October 17, 2017. *Doc. 30.* Plaintiff objects to all of the Magistrate Judge's recommended findings, except that he has abandoned the argument that the ALJ erred by failing to resolve a conflict between the Dictionary of Occupational Titles ("the DOT") and the Vocational Expert's ("VE") testimony regarding Plaintiff's reaching limitations, which was addressed by the Magistrate Judge in his third recommended finding. *See generally id.* For the reasons discussed below, the Court agrees with the Magistrate Judge's PFRD that the ALJ committed no reversible error.

II. STANDARD OF REVIEW

After a party objects to the magistrate judge's proposed findings and recommendations, the Court "shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b). Objections must be made with specificity; general or conclusory objections are insufficient. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060-61 (10th Cir. 1996). Further, "issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### III. ANALYSIS

### The ALJ's decision to assign Dr. Puziss's opinion little weight is supported by substantial evidence.

Plaintiff first objects to the Magistrate Judge's finding that the ALJ properly supported his decision to assign Dr. Puziss's opinion little weight. *Doc. 30* at 4-8. In evaluating the medical opinion of a claimant's treating physician, the ALJ must complete a two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An ALJ must first determine whether the opinion of a treating source is entitled to controlling weight. *Id.* A treating source's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). To determine what weight to give to a medical opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)); *see also Kilpatrick v. Astrue*, 502 F. App'x 801, 806 (10th Cir. 2012) (unpublished).

If the ALJ does not give the treating source's opinion controlling weight, he "must announce good reasons for the weight assigned" and "[s]uch reasons must be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *King v. Barnhart*, 114 F. App'x 968, 970 (10th Cir. 2004) (unpublished) (quoting SSR 96-2p, 1996 WL 374188, at *5); *see also* 20 C.F.R. § 404.1527 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Here, the ALJ gave "very little weight" to Dr. Puziss's opinion, which limited Plaintiff to sedentary work.[1] AR at 30. The ALJ provided the following reasons for the weight he assigned:

> First, it appears that the [opinion] was based on the claimant's subjective report rather than on objective evidence, as Dr. Puziss's records, and those of others, all discussed above, document minimal objective findings and none that would warrant a limitation to sedentary work. . . . In addition, the claimant did not see Dr. Puziss after September 12, only six months after the alleged onset date, and subsequent records do not document

---

[1] The ALJ did not explicitly state that he declined to give "controlling weight" to Dr. Puziss's opinion. Such a statement is unnecessary as long as such a finding is implicit in the decision. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion, we will not reverse on this ground."). Here, by expressly stating that he was giving Dr. Puziss's opinion "very little weight," the ALJ implicitly found that the opinion should not be given controlling weight. Plaintiff does not argue to the contrary.

5

> objective findings or any change that would support a limitation to sedentary work. Finally, no other physician has subsequently assessed similar limitations. Therefore, because Dr. Puziss's opinion is not well supported or consistent with the record considered as a whole, it is given very little weight.

AR at 30-31.

Plaintiff focuses on two reasons given by the ALJ that Plaintiff argues are inadequate to justify assigning the opinion of Dr. Puziss little weight: (1) the opinion relies almost entirely on Plaintiff's subjective reporting, and (2) the opinion is not consistent with the record as a whole. *See doc. 30* at 4-8; *see also* AR at 30-31. First, regarding Plaintiff's subjective reporting, Plaintiff argues that the ALJ did not adequately explain his reasoning for rejecting Plaintiff's subjective reporting as unreliable. *Doc. 30* at 7. Notably, devaluing a treating source's opinion because it is based almost entirely on a claimant's subjective reporting, rather than objective medical evidence, is proper. *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001).

Moreover, as Plaintiff acknowledges, the PFRD outlines the ALJ's numerous citations to the record that support an adverse credibility finding against Plaintiff, fairly casting doubt on opinions informed primarily by Plaintiff's subjective reporting. *See doc. 30* at 7; *doc. 29* at 9-13. Specifically, the PFRD discusses the ALJ's overall credibility analysis of Plaintiff, including the following:

> The ALJ observed that Dr. Hamilton in 2013 told Plaintiff that Plaintiff's diagnosis was "certainly not a good explanation for [Plaintiff's reported] symptoms"

6

and that he would refuse to see Plaintiff again, unless he had "an identifiable lesion corresponding to his symptoms without a secondary gain." AR at 24. The ALJ further noted that other reports, such as the office treatment records from Providence Sports Care Center, accentuate Plaintiff's "very exaggerated response" to certain testing, and indicate numerous providers' "concern that [Plaintiff] was exaggerating his symptoms and was unable to be redirected." AR at 27, 29, 744.

In the same vein, the ALJ cites to the notes of Dr. Brevard to suggest that Plaintiff's subjective reporting should be relied on with caution:

> [Plaintiff] held his neck and shoulders in a contorted manner. Examination findings were again unremarkable. [Plaintiff] reiterated multiple times that he would commit suicide if he was not provided pain medications, but when he was told that he needed to be placed under supervision until he could be cleared mentally, he said that he was 'just joking and wanted to leave.' He showed marked improvement in his contortion and symptoms and was able to walk and straighten his neck without difficulty. [Plaintiff] 'showed a great deal of agility' despite his initial presentation and reported symptoms.

AR at 25-26, 726.

Finally, the ALJ refers to another incident that similarly calls into question Plaintiff's motives in seeking treatment:

> In February 2014, the claimant requested a prescription for prednisone, but Dr. Everson said that she did not recommend steroid for unspecified neck pain. The claimant then reported severe worsening of his pain and said that he might need to be seen in the hospital. He said that if the clinic would not prescribe medication, he would [go] to the emergency room "or be forced to self-medicate," noting that his neighbors had offered their pain pills.

AR at 27, 1034-35.

The Magistrate Judge discussed the above credibility evidence in his PFRD to demonstrate that substantial evidence supports the ALJ's decision to discount Dr. Puziss's opinion due to its reliance on Plaintiff's subjective reporting. *See doc. 29* at 10-11. Plaintiff objects to this portion of the PFRD on the basis that the Magistrate Judge's analysis constitutes a wrongful post-hoc argument on the ALJ's behalf. *Doc. 30* at 7-8 (citing to *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) for the proposition that the court "may not create or adopt *post hoc* rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). However, the ALJ incorporated each of these citations in his own opinion when conducting his credibility analysis. *See* AR 14-34. Thus, rather than providing substantial evidence to support the ALJ's opinion in an impermissible post-hoc fashion, the Magistrate Judge merely cited to each of these pieces of evidence when demonstrating what evidence the ALJ had used to support his decision—*i.e.*, the rationalizations that were apparent from the ALJ's decision itself. The Court therefore rejects this argument.

Next, despite myriad references to Plaintiff's untrustworthiness cited by the ALJ, Plaintiff contends that the ALJ's analysis was insufficient because "the ALJ never connects these examples to the discounting of Dr. Puziss's opinion but rather relies on boilerplate, conclusory statements." *Doc. 30* at 7. The ALJ was not required to reiterate his credibility analysis in its entirety when he discredited Dr. Puziss's opinion on the

8

basis that it was informed by subjective complaints. Rather, it is the ALJ's duty to create an analysis that is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *5. Because the ALJ had already discussed in great detail his adverse finding regarding Plaintiff's credibility, a subsequent reviewer could easily follow the ALJ's logic in rejecting an opinion that relied almost entirely on Plaintiff's subjective reporting. The Court therefore finds that the credibility analysis provided by the ALJ constitutes substantial evidence for the ALJ to doubt Plaintiff's subjective reports to his doctors and, consequently, to devalue a medical opinion based primarily on such reports.

Next, Plaintiff contends that the ALJ's decision to assign the opinion little weight was incorrect, because Dr. Puziss's conclusion that Plaintiff should have been limited to sedentary work is supported by certain other evidence in the record that was not discussed in the ALJ's analysis. *Doc. 30 at 4-5*. In so arguing, Plaintiff cites to seven examples within the record that support Dr. Puziss's finding. *Doc. 30 at 5*. However, accepting Plaintiff's argument would require the Court to *reweigh* the evidence and make a finding in favor of Plaintiff, merely because some evidence supports a finding contrary to the ALJ's finding. *Doc. 30 at 5*. This is not the applicable standard of review. "In reviewing the ALJ decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir.

2008) (internal quotations omitted) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). "Instead, we review the ALJ's decision only to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003)). Further, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ thoroughly supported his conclusion that Dr. Puziss's opinion is against the weight of the evidence with citations to the record. *See* 20 C.F.R § 404.1527(c)(3), (c)(4) (ALJ must consider supportability of medical opinion and opinion's consistency with record as a whole when evaluating weight to be accorded). *See also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion on the basis of his conclusion that it was inconsistent with other medical evidence). The ALJ's analysis underscored that the sedentary work limitation, suggested by Dr. Puziss, is against the weight of the evidence, observing "[t]he consistently unremarkable findings noted during numerous emergency room visits and continued need for only conservative treatment." AR at 26. Specifically, the ALJ cited to the medical records from the Portland Adventist Medical Center, which reveal that Plaintiff's 2012 emergency room "[e]xamination was normal and revealed normal range of motion in the back and musculoskeletal system, as well as normal strength." AR at

10

24. Similarly, the ALJ quoted other reports, including those from University Hospital South and Adventist Health, which found Plaintiff's condition upon examination "unremarkable." AR at 25. Thus, the objective medical evidence discussed by the ALJ does not support a limitation to sedentary work, which "involves lifting no more than 10 pounds at a time" and requires only occasional walking and standing. 20 C.F.R. § 404.1567(a). The ALJ's citation to these records easily exceeds the required "substantial evidence" bar of "more than a mere scintilla" or enough evidence that "a reasonable mind might accept as adequate to support a conclusion." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

Finally, in discounting Dr. Puziss's opinion, the ALJ also permissibly relied on the fact that Plaintiff's activities, such as carrying books home from the library and traveling to California, were inconsistent with Dr. Puziss's recommendation of a sedentary restriction. AR at 30. *See* 20 C.F.R. § 404.1529(c)(3)(i) (Plaintiff's daily activities should be considered in a disability determination); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (finding that substantial evidence supported ALJ's decision that claimant was not disabled when claimant's description of daily activities did not demonstrate significant limitations). In other words, the ALJ relied on substantial evidence of record to support his decision to limit Plaintiff to light work with certain restrictions, rather than to sedentary work as recommended by Dr. Puziss. The Court may not overturn that decision by reweighing the evidence.

11

Contrary to Plaintiff's contentions, the ALJ supported his reasoning for assigning little weight to Dr. Puziss's opinion with substantial evidence that subsequent reviewers can adequately follow. Thus, the Court overrules Plaintiff's first objection.

**The ALJ properly incorporated the opinion of consultative examiner, Dr. Edwin Holmes, in Plaintiff's RFC.**

In his second objection, Plaintiff contends that the Magistrate Judge incorrectly recommended affirming the decision of the ALJ, because it was reversible error for the ALJ to ignore three of Dr. Holmes's assessed limitations in Section I of his Mental Residual Functional Capacity Assessment ("MRFCA"). *Doc. 30* at 8-14.

An ALJ is required to "consider all medical opinions in the record," and generally must also discuss the weight assigned to such opinions. *Quintero v. Colvin*, 567 F. App'x 616, 619-20 (10th Cir. 2014) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)-(e), 416.927(c)-(e)). To determine what weight to give to a medical opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)); *see also Kilpatrick v. Astrue*, 502 F. App'x 801, 806 (10th Cir. 2012) (unpublished).

As discussed in the PFRD, it is undisputed that the ALJ assigned significant weight to Dr. Holmes's opinion. AR at 31; *see also doc. 15* at 20. However, Plaintiff argues that the ALJ erred by failing to incorporate, into Plaintiff's RFC, three moderate restrictions noted by Dr. Holmes in Section 1 of his MRFCA, despite giving significant weight to the opinion. *Doc. 30* at 8. Specifically, Dr. Holmes noted Plaintiff had moderate restrictions in his abilities to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without unreasonable number and length of rest periods; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR at 114-15.

Plaintiff asserts that the ALJ ignored these Section I restrictions, because they are inconsistent with the RFC that the ALJ determined for Plaintiff. *Doc. 30* at 9. However, the agency's Program Operations Manual Systems "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished)

(citing POMS DI 25020.010 B.1.). Yet, as the Plaintiff emphasizes, an ALJ cannot "turn a blind eye" to moderate Section I limitations. *Id.* Further, "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.*

The Magistrate Judge rejected this argument on the basis that (1) Dr. Holmes did incorporate all of the MRFCA Section I limitations into his Section III narrative, and (2) in turn, the ALJ incorporated all of the recommended limitations into Plaintiff's RFC. The Court agrees.

As noted above, in Section I, Dr. Holmes determined that Plaintiff had a moderate restriction in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. In consideration of these aforementioned limitations, in his Section III analysis, Dr. Holmes states that Plaintiff "appears to have adequate ability to perform at a consistent pace particularly if he is engaged in a *simple, repetitive task*. He appears to have an adequate ability to maintain a regular schedule *with [occasional] difficulty* in regards to sustained work activity." AR at 115 (emphasis added). This conclusion incorporates the Section I moderate restriction and explains how that restriction translates into

14

Plaintiff's practical abilities. In turn, the ALJ's RFC determination completely incorporates these restrictions by limiting Plaintiff to "simple, routine, repetitive tasks consistent with unskilled work." AR at 21.

Next, Dr. Holmes's Section I assessment recognizes Plaintiff is moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. The Section III narrative incorporates this Section I assessment when determining that "[Plaintiff] will do best away from the public and limited coworker interaction. [Plaintiff] would do best with clear expectations and consequences. . . . Irritability and possible dramatic pain presentation suggest some insulation from the public and co-workers is warranted." AR at 115. Again, this conclusion is paralleled in the ALJ's RFC determination, which pronounces, "[Plaintiff] cannot have contact with the public, and can have occasional superficial contact with coworkers." AR at 21.

Plaintiff's objection on this point does not provide examples or an explanation as to *how* the RFC and Section I and Section III limitations are inconsistent, other than to make the blanket assertion that the ALJ ignored the Section I findings. However, it is evident that the ALJ incorporated all of Dr. Holmes's opinions related to Plaintiff's limitations into his ultimate determination of Plaintiff's RFC. Thus, the Court agrees with the Magistrate Judge that Plaintiff's assertion that the ALJ turned "a blind eye to

either moderate Section I limitations or narrative Section III limitations of Dr. Holmes's assessment" is without merit. *Doc. 29* at 17. Because the ALJ's determination of Plaintiff's RFC and Section III of Dr. Holmes's MRFCA do properly incorporate these three assessed limitations, Plaintiff's second objection is overruled.

**The ALJ comported with proper legal standards in determining Plaintiff's sitting/standing limitation.**

In this third objection, Plaintiff argues that the ALJ failed to properly investigate an alleged conflict between VE testimony and the DOT regarding Plaintiff's sitting/standing limitation. *Doc. 30* at 14-17. Specifically, he underscores that, according to Social Security Ruling (SSR) 83-12 and SSR 83-10, a person with such a limitation cannot necessarily perform light work, as it entails standing for six hours in the aggregate workday. *See* 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983) (explaining that a claimant who requires alternating periods of sitting and standing "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work); 1983 WL 31251, at *5-*6 (S.S.A. Jan. 1, 1983) (explaining that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday). Yet Plaintiff's RFC requires him to alternate sitting and standing every 30 minutes, limiting Plaintiff's standing capacity to four hours per day, which he argues is inconsistent with the VE's testimony that someone with Plaintiff's RFC can perform any jobs in the "light work" category. *Doc. 30* at 15.

In general, "[o]ccupational evidence provided by a VE . . . should be consistent with the occupational information supplied by the DOT." SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). Further, "[w]hen there is an *apparent* unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled." *Id.* (emphasis added). In the case of a conflict, the ALJ must "explain in the determination or decision how he or she resolved the conflict." *Id.* at *4.

Plaintiff's objection rests on the nature of light jobs, as a general category, rather than on the requirements of the specific DOT jobs for which the VE found Plaintiff was qualified. However, as the ALJ affirmed during the hearing, the sit-stand position-change "[is] not addressed in the Dictionary of Occupational Titles." AR at 80. Plaintiff conceded this fact in prior briefing. *Doc. 15* at 24. Thus, DOT guidance was absent regarding a sit/stand position change concerning the *particular* jobs at hand. Given this absence of guidance, the ALJ asked the VE what he based his testimony on when determining which jobs could be performed by someone with Plaintiff's RFC, including the need to frequently alternate between sitting and standing. AR at 80. The VE responded that his testimony was based on his twenty years' experience as a rehab counselor. AR at 80-81.

Looking to the general definition of light or sedentary work under the SSA regulations would not have provided the ALJ with a sufficient basis to determine whether *any* jobs were suitable for a claimant with a limitation requiring him to alternate sitting and standing. Therefore, as the PFRD noted, the ALJ's choice to rely on the VE's testimony to render a determination in the absence of DOT guidance was proper, for "[t]he whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial and administrative notice and provide an alternative avenue of proof." *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993)); *see also* SSR 00-4p, 2000 WL 1898704 at *2 (observing that information about job requirements not listed in the DOT may be obtained from a vocational expert, based on the VE's "experience in job placement or career counseling").

Finally, the ALJ confirmed that the remainder of the VE's testimony—the testimony not based on his personal experience as a rehab counselor—was consistent with the DOT. AR at 81. This is sufficient to overcome Plaintiff's allegation of error, as there was no apparent conflict between the DOT and the jobs the VE selected for Plaintiff based on his specific RFC.

As a result, the Court adopts the Magistrate Judge's finding that the ALJ properly accommodated Plaintiff's alternating sit-stand limitation in determining, at step five, that Plaintiff retains the RFC to perform jobs that exist in significant numbers

18

in the national economy. Therefore, because the ALJ comported with proper legal standards in relying on the VE's testimony to find that Plaintiff was not disabled at step five, the Court overrules Plaintiff's third objection.

**IV.     CONCLUSION**

Wherefore, it is hereby ordered that Judge Wormuth's Proposed Findings and Recommended Disposition (*doc. 29*) is ADOPTED, Plaintiff's objections (*doc. 30*) are OVERRULED, and Plaintiff's Motion to Reverse and Remand (*doc. 15*) is DENIED.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE